```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                    :
VICTOR PIECHOCKI
                                    :

      v.                            :  Civil Action No. DKC 18-2087
                                    :
AMERICAN BRIDGE COMPANY
                                    :
```

**MEMORANDUM OPINION**

Currently pending in this disability discrimination case are a motion to strike and partial motion to dismiss by Defendant American Bridge Company ("ABC") (ECF No. 13), and a motion to lift the previous order staying the matter filed by Plaintiff Victor M. Piechocki ("Mr. Piechocki") (ECF No. 22). The issues have been briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion to lift the stay will be granted, Defendant's motion to strike will be denied, and Defendant's partial motion to dismiss will be granted in part and denied in part.

**I.   Background**

The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff. In October 2016, Plaintiff applied for a position with Defendant that would require him to work on the Delaware Memorial Bridge. During his physical examination for Defendant, Plaintiff disclosed that he

has epilepsy. Based on this disclosure, the physician performing the physical examination required that Plaintiff obtain clearance from his neurologist before he could begin working for Defendant. Plaintiff claims that, despite being cleared for employment by his prescriber, physician, and neurologist, the project manager, superintendent, and foreman refused to let him work when he arrived at the jobsite for his first day.

Plaintiff filed a complaint against Defendant with the Equal Employment Opportunity Commission ("EEOC") in 2016, and the EEOC began its investigation at the beginning of 2017. Plaintiff states that, on April 9, 2018, the EEOC told him his "impairment made [him] a direct threat [and] closed the case."

On July 9, 2018, Plaintiff, proceeding *pro se*, filed a complaint against Defendant "under the ADA [Americans with Disabilities Act] for disability discrimination." The complaint is not divided into separate counts for separate claims, but may include claims for (1) disability discrimination under the ADA, (2) defamation, (3) intentional infliction of emotional distress, and (4) false imprisonment.[1] Plaintiff contends that

---

[1] ABC states that "[u]nless otherwise ordered by the Court," it "will file answer to Plaintiff's discrimination claim under the [ADA]. . . after the Court rules on ABC's partial motion to dismiss." (ECF No. 13-1, at 1 n.1) (citing *Johnson v. Pope*, No. 7:13-cv-78-BO, 2013 WL 6500752, at *3 (E.D.N.C. Dec. 11, 2013) ("[F]iling a partial motion to dismiss will suspend the time to answer those claims . . . that are not subject to the motion.")).

Defendant "report[ed] false criminal allegations to the FBI" to "distort facts" and have Plaintiff "arrested to prevent" his lawsuit. Because of this alleged conduct, Plaintiff claims Defendant defamed his character, slandered him, inflicted "mental anguish" upon him, and contributed to his alleged false imprisonment in Baltimore County, Maryland. Plaintiff adds that the EEOC, which is not a party to this case, is "guilty of a der[e]liction of duty" due to its "inability to perform a proper investigation[.]" As a result, Plaintiff requests that the EEOC "recommendation be ignored." As support for this request, Plaintiff's complaint includes a transcribed version of a letter allegedly sent to the EEOC in response to the EEOC's decision to close Plaintiff's case. (ECF No. 1, at 6). Plaintiff filed an addendum to his complaint on October 11, 2018, arguing again that Defendant "wrongfully terminated [his] employment" in violation of "Title I of the Americans with Disabilities Act of 1990[.]" (ECF No. 9, at 1).

In response, on October 22, 2018, Defendant filed a motion to strike and partial motion to dismiss. (ECF No. 13). Plaintiff filed an opposition on November 9, 2018. (ECF No. 17). On August 8, 2019, the action was stayed because of questions about Plaintiff's competency to proceed *pro se*. (ECF No. 21). On

July 7, 2020, Plaintiff filed a now pending motion to lift this stay.  (ECF No. 22).

The motion to lift the stay contains new factual allegations not included in the original complaint, and asserts that the claim arises under "Title I of the [ADA]."[2]  A complaint may not be amended in this fashion.  Rather, Plaintiff must seek to file an amended or supplemental complaint.  Plaintiff will be granted leave to supplement his claim of ADA discrimination with such details within thirty (30) days of this opinion as such amendment would not be futile.[3]

II. **Competency**

On August 8, 2019, this court took judicial notice of the fact that Mr. Piechocki was shown on the Maryland Judiciary Case Search to have been found incompetent to stand trial on March 4,

---

[2] Mr. Piechocki contends that an "Omega Medica[l] Center," as Defendant's "health professionals," "wrongfully inquired" into his disability given that he had *not* requested "reasonable accommodations."    He also argues that Defendant imposed "unnecessary restrictions" on him by not allowing him to work and that the restrictions were "retaliation" for the clearance his doctor had provided.  Lastly, he argues that "defendant failed to give a timely and lawful reason for dismissing" him.

[3] In a section entitled "Relief Sought," Plaintiff attempts either to supplement or amend the damages sought in his complaint, requesting "as a remedy: Six hundred seventy-five thousand dollars ($675,000) for lose wages, slander, and exhaustion of time, effort, and expenses of the claim itself." Mr. Piechocki adds in a supplemental filing on July 10, 2020, (ECF No. 23), that he "wishes to add discrimination due to disability" to this new prayer for relief.

4

2019, for state charges of assault and carrying of a dangerous weapon with intent to injure.  Another case pending in this court was "Plaintiff's consolidated petition for writ of habeas corpus arising from his [state] imprisonment." (ECF No. 21) (citing *Piechocki v. State of Md.*, No. 19-cv-01064-DKC (D.Md. 2019)). In that case, Plaintiff had filed a letter stating that he had been found incompetent to stand trial, and pro bono counsel was appointed in that matter.

Plaintiff subsequently filed the pending motion to lift the stay.  (ECF No. 22).  Included with that motion is a "Competency Monitoring Evaluation" completed by Christopher T. Perry, for the Circuit Court for Baltimore County.  It declares him fit to stand trial.  (ECF No. 22-4).[4]  Any former "ambiguities" that remained around Mr. Piechocki's fitness to represent himself in

---

[4] This and the other exhibits included with the motion were placed under seal when they were filed because they contain Plaintiff's sensitive personal and medical information.  These exhibits will remain under seal, except: 1) the "Competency Monitoring Evaluation" (ECF No. 22-4), only insofar as it is relied on here for its competency finding, 2) the letters from the EEOC investigator declining to pursue Mr. Piechocki's ADA failure-to-hire claim (ECF Nos. 22-11, 22-13), and 3) the transcribed letter Mr. Piechocki alleges that he sent to the EEOC in response to its first letter. (ECF No. 22-12).  These letters will be unsealed in full as the alleged failure of the EEOC properly to investigate his claims is relied on by Mr. Piechocki in his original complaint and relevant to his ADA discrimination claim.  (ECF No. 1, at 4).

5

this matter are dispelled, and his motion to lift the stay will be granted. (*See* ECF No. 21, at 3).

### III. Motion to Strike

Defendant moves to strike (1) "an entire section of the [c]omplaint contain[ing] allegations that relate to the EEOC's investigation" and (2) "the 'Additional Information' section of the [c]omplaint contain[ing] a letter that Plaintiff purportedly sent to the EEOC during the EEOC's investigation." Defendant argues that these portions of Plaintiff's complaint should be stricken because they "do not at all relate to Plaintiff's claims against [Defendant]" and "it cannot possibly respond to the[m.]" (ECF No. 13-1, at 4).

Motions to strike are governed by Fed.R.Civ.P. 12(f), which gives the court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Thus, "[w]hen reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." *Kantsevoy v. LumenR LLC*, 301 F.Supp.3d 577, 611 (D.Md. 2018)

(quoting *Piontek v. Serv. Ctrs. Corp.*, No. 10-cv-1202-PJM, 2010 WL 4449419, at *3 (D.Md. Nov. 5, 2010)) (internal quotation marks omitted).

Rule 12(f) motions "will be denied unless the matter under challenge has 'no possible relation to the controversy and may prejudice the other party.'" *U.S. ex rel. Ackley v. Int'l Bus. Machines Corp.*, 110 F.Supp.2d 395, 406 (D.Md. 2000) (quoting *Steuart Inv. v. Bauer Dredging Constr. Co.*, 323 F.Supp. 907, 909 (D.Md. 1971)); *see also* 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3$^d$ ed. 2019). Although Plaintiff's criticisms of the EEOC's investigation are not directly relevant to Plaintiff's claims against Defendant, it can hardly be said that they have no possible relation to the controversy or that declining to strike them from the complaint would somehow prejudice Defendant. Indeed, if Defendant lacks knowledge or information to form a belief about the veracity of the allegations against the EEOC, it can state that in its answer. *See* Fed.R.Civ.P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."). Accordingly, Defendant's motion to strike will be denied.

**IV. Partial Motion to Dismiss**

    **A.     Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

*Pro se* pleadings are to be liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims

never presented.  *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999).  That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**B.   Analysis**

**1.   Defamation**

ABC construes Mr. Piechocki's defamation of character and slander accusations as an attempt to plead a claim of defamation under Maryland law.  ABC seeks dismissal of Mr. Piechocki's defamation claim, arguing that Plaintiff "fails to plead any actual facts to support his claim – most notably, not even the content of the allegedly false allegations." (ECF No. 13-1, at 5).  Mr. Piechocki's response is confusing, but states that Defendant contacted law enforcement about the "threatening manner" he used in "attempt[ing] to resolve the issue[.]" (ECF No. 17-1, at 2).

In Maryland, slander, along with libel, is included in the tort of defamation.  *Adam v. Wells Fargo Bank, N.A.*, No. 09-cv-2387-ELH, 2011 WL 3841547, at *16 n.23 (D.Md. Aug. 26, 2011); *see also Lake Shore Invs. v. Rite Aid Corp.*, 67 Md.App. 743, 752, 509 A.2d 727 (1986) ("Libel and slander are two branches of

9

that tort."). Thus, Plaintiff's claims of slander and defamation of character will be treated as a defamation claim.

To state a claim for defamation in Maryland, a plaintiff must plead "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, [and] (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 402 Md. 191, 198 (2007).  "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* at 198-199 (internal quotations removed).

Mr. Piechocki provides some factual support for his defamation claim, stating that Defendant "report[ed] false criminal allegations to the FBI in order to distort facts and have [him] arrested to prevent the law[]suit" and reiterating that Defendant "attempt[ed] to corruptly stop the suit by making false allegations to the FBI."  (ECF No. 1, at 8).  Plaintiff comes close to alleging properly a claim for defamation.  He alleges that the statement was false, Defendant made the statement, and Plaintiff experienced the harm of arrest due to the statement.  Mr. Piechocki's claim fails on the first requirement, however.  His bare assertion that Defendant made

10

criminal or false allegations is not enough to state that Defendant made a defamatory statement. *See, e.g.*, *Jackson v. Warning*, No. PJM 15-1233, 2016 WL 520947, at *7 (D.Md. Feb. 5, 2016) (declaring that plaintiff's failure to identify specific false statements rendered plaintiff's defamation claim deficient); *Artis v. U.S. Foodservice, Inc.*, No. ELH-11-3406, 2012 WL 2126532, at *10 (D.Md. June 12, 2012) (dismissing a defamation claim because the plaintiff failed to identify any allegedly defamatory statements).

In his opposition,[5] Plaintiff provides some clarification that Defendant made a defamatory statement about Plaintiff's involvement in a "violent occurrence[.]" (ECF No. 17-1, at 2). Mr. Piechocki cannot use his opposition as a vehicle for amending his complaint. However, if Plaintiff were to include and expand upon the factual detail asserted in his opposition in an amended complaint, he may be able to state a viable claim for defamation. Given Mr. Piechocki's *pro se* status, he will be permitted to

---

[5] This paper is entitled "Affidavit in Support of Claim and of Relief Sought," but it is responsive to Defendant's partial motion to dismiss (ECF No. 17-1). Nonetheless, it is presented as an exhibit to an "Addendum for Disability Discrimination Suit," and both documents attempt to supplement the ADA allegations legally and factually. (ECF No. 17). As to the ADA claim, Plaintiff is directed to include any relevant details of discrimination in a proposed amended complaint as part of a motion for leave to amend that claim if he wishes it to be considered as part of his complaint.

file an amended complaint within thirty (30) days to include factual support for the claim of defamation. Specifically, Plaintiff's amended complaint must specify the content of the Defendant's alleged defamatory statement. Mr. Piechocki will not, however, be permitted to assert new claims or allege facts outside the scope of the defamation claim he attempted to raise initially. *See White v. Home Depot, U.S.A., Inc.*, No. 13-cv-0624-DKC, 2013 WL 4501328, at *4 (D.Md. Aug. 21, 2013) (allowing *pro se* plaintiff leave to amend to expand upon new factual assertions raised in the opposition).

### 2. Mental Anguish

Mr. Piechocki next alleges he suffered from "mental anguish" because of ABC's alleged "false criminal allegations to the FBI[.]". (ECF No. 1, at 9). Defendant assumes, for the purposes of its motion, that Plaintiff's complaint asserts a claim for intentional infliction of emotional distress ("IIED"). *See Baltimore-Clark v. Kinko's Inc.*, 270 F.Supp.2d 695, 701 (D.Md 2003) (accepting plaintiff's claim for "mental injury" as a claim for IIED even though plaintiff does not include an IIED claim in her complaint). ABC argues that Mr. Piechocki does not allege sufficient facts to show that its conduct was "extreme and outrageous" or that he experienced "severe" emotional distress. (ECF No. 13-1, at 5-6).

12

To bring an IIED claim successfully, "a plaintiff must allege . . . facts showing that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." *Arbabi v. Fred Meyers, Inc.*, 205 F.Supp.2d 462, 465-66 (D.Md. 2002) (citation omitted). Judge Davis has explained that the tort demands specific showings, even at the pleading stage:

> It should be emphasized that in Maryland, "the tort of intentional infliction of emotional distress is rarely viable." *Farasat v. Paulikas,* 32 F.Supp.2d 244, 247 (D.Md.1997). Each element must be pled and proved with specificity. *See Foor v. Juvenile Serv. Admin.,* 78 Md.App. 151, 552 A.2d 947, 959 (1989). "It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Id.* (citations omitted). A complaint that fails to allege sufficient facts in support of each element must be dismissed. Thus, "as a deficiency in any one [element] is fatal, we need address only the first." *Id.*

*Est. of Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F.Supp.2d 702, 712 (D.Md. 2001).

The only support Mr. Piechocki provides for his IIED claim is his statement that ABC "report[ed] false criminal allegations to the FBI in order to distort facts and have [him] arrested to

13

prevent the law[]suit." (ECF No. 1, at 8). Plaintiff does not explain how this conduct is "extreme and outrageous" and caused him severe emotional distress. Thus, Mr. Piechocki's claim for intentional infliction of emotional distress fails because he does not set forth sufficient facts to satisfy the stringent pleading requirements for this tort. *Silkworth v. Ryder Truck Rental, Inc.*, 520 A.2d 1124 (Md. 1987) (recognizing that the elements of this tort "are stringent standards, and each must be pled and proved with particularity"). Unlike his defamation claim, Mr. Piechocki fails to provide any support in his opposition that would predict an ability successfully to allege a claim for intentional infliction of emotional distress. Accordingly, Plaintiff's claim for IIED will be dismissed, and he will not be permitted to provide additional support for the claim in an amended complaint.

### 3. False Imprisonment

Finally, Mr. Piechocki states in his complaint that he has been "falsely imprisoned" and his "incarceration is a partial result of [ABC's] attempt to corruptly stop the suit by making false allegations to the FBI." (ECF No. 1, at 9). ABC infers that Mr. Piechocki alleges a claim for false arrest or imprisonment arising under Maryland law, or a false imprisonment claim arising under 42 U.S.C. § 1983, and argues that Plaintiff

fails to state a claim under any of these theories of relief. (ECF No. 13-1, at 7-8).

In response to Defendant's motion to dismiss, Plaintiff clarifies that "[a]t no time did [he] claim false imprisonment by [Defendant], [o]nly that [its] intentional actions . . . contributed to his incarceration which was a contributing factor of mental anguish. . . [and] was conv[en]ient [and] beneficial to [Defendant.]"  (ECF No. 17-1, at 2-3).  Therefore, while Mr. Piechocki makes explicit reference to his alleged "falsely imprisoned in the Balt. County Detention Center" in his original complaint as "the reason the suit is being filed so broadly," (ECF No. 1, at 8), his opposition asserts he never intended it as an independent cause of action.  Thus, analysis of Defendant's request for dismissal is unnecessary because Plaintiff either never intended to bring such a claim against Defendant or abandons it now.

V. **Conclusion**

For the foregoing reasons, Plaintiff's motion to lift the stay will be granted, and Defendant's motion to strike and partial motion to dismiss will be granted in part and denied in part.  A separate order will follow.

                                              /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge